## PAULINA S. WHITING *versus* DRAPER SMITH.

In an action of slander the plaintiff may set forth in his declaration, either the word spoken, or the substance of them.

Where the words spoken are set forth, it is sufficient for the plaintiff to prove so many of them as would by themselves support the action.

ACTION of slander. The declaration contained three counts. The first alleges, that the defendant uttered the words, " she is a whore and unfit to keep school." In the second the words are, " she is a bitch and whore right from the hill in Boston." The third alleges, " that the defendant charged the plaintiff with having been guilty of the crimes of fornication and adultery."

The cause was tried before *Morton* J., upon the general issue, and the jury returned a verdict for the plaintiff upon all the counts and assessed general damages in the sum of 866 dollars.

The defendant moved in arrest of judgment, on account of the insufficiency of the third count.

He also moved for a new trial, on the ground that the evidence offered in support of the first and second counts, was insufficient to warrant a verdict for the plaintiff upon either of them.

The following evidence was introduced in support of these two counts.

One Shumway testified, that he heard the defendant say concerning the plaintiff, " she is a damned bitch and a whore from Negro hill ; " that in subsequent conversation the defendant denied that he had used those words, but admitted that he said " she was no more fit to keep school than a whore from Negro hill." One Morse testified, that he heard a part of the conversation between the defendant and Shumway ; that when he came to them, he heard the defendant say something about whore from Negro hill ; that Shumway told the defendant he should suffer for it ; that the defendant asked for what, and said, " what did I say," and Shumway replied, " you said she is a whore from Negro hill ; " and that the defendant denied that he used those words, but acknowledged that he said, " he should as lief have a whore from Negro hill." One Plimpton testified, that he heard the defendant call the plaintiff a pretty little girl, by way of ridicule, and when they were speaking of her incompetency to instruct in arithmetic, " the defendant said in a romantic way, that he had as lief have a whore from Negro hill for a schoolmistress as the plaintiff; " but the witness did not understand the defendant to mean that she was a lewd girl. One Smith testified, that the defendant said the plaintiff " was a bitch and had better go back to Negro hill where she belonged."

*Leland* argued in support of the motion in arrest, that the third count was bad, because it did not set out the words spoken ; and he requested the Court to revise the decision in *Nye* v. *Otis*, 8 Mass. R. 122, which he said was founded on no other authority than an *obiter dictum* of Lord *Hardwicke*, in *Nelson* v. *Dixie*, Cas. Temp. Hardw. 305, repeated by compilers of books of practice. 1 Morgan's Vad. Mec. 146, 147 ; Com. Dig. *Action on the Case for Defamation*, *G* 6, (Hammond's edit.) note *g* ; 2 Richardson's Pract. K. B. 108. Lord *Hardwicke* erred in supposing that a precedent of this general mode of declaring was to be found in Rastell. The mistake may have been occasioned by the old precedents in cases of malicious prosecution. *Anon.* 1 Ventr. 264 ; *Blizard* v. *Kelly*, 2 Barn. & Cressw. 283 ; *S. C.* 3 Dowl.

31 *

& Ryl. 519. The dictum of Lord *Hardwicke* has been over-ruled in England for satisfactory reasons ; and several decisions have been made in opposition to it in this country. *Cook* v. *Cox*, 3 Maule & Selw. 110 ; *Wood* v. *Brown*, 6 Taunt. 169, and note in Amer. edition ; *Ward* v. *Clark*, 2 Johns. R. 10 ; *Yundt* v. *Yundt*, 12 Serg. & Rawle, 427. The principle to be extracted from the cases appears to be, that it is necessary to set forth, not the substance of the charge, but the substance of the words uttered, that is, the essential part of the words. *Hale* v. *Cranfield*, Cro. Eliz. 645 ; *Garford* v. *Clerk*, Cro. Eliz. 857 ; *Newton* v. *Stubbs*, 3 Mod. 71 ; Com. Dig. *Action on the Case for Defamation*, G 6 ; *Barnes* v. *Holloway*, 8 T. R. 150; *Maitland* v. *Goldney*, 2 East, 434 ; *Cook* v. *Cox*, 3 Maule & Selw. 110 ; 1 Chit. Pl. (5th edit.) 434, 435 ; *Miller* v. *Miller*, 8 Johns. R. 75 ; *M'Connell* v. *M'Coy*, 7 Serg. & Rawle, 223 ; *Yundt* v. *Yundt*, 12 Serg. & Rawle, 427 ; *Fox* v. *Vanderbeck*, 5 Cowen, 513 ; *Olmsted* v. *Miller*, 1 Wendell, 506 ; *Wormouth* v. *Cramer*, 3 Wendell, 394 ; *Atkinson* v. *Hartley*, 1 M'Cord, 203.

Some of the authorities above cited are applicable to the motion for a new trial.

*Richardson* and *Harrington*, for the plaintiff, relied, as to the form of the third count, on *Nye* v. *Otis*, 8 Mass. R. 122 : they cited likewise Anon. 1 Ventr. 264 ; *Blizard* v. *Kelly*, 3 Dowl. & Ryl. 519 ; *S. C.* 2 Barn. & Cressw. 283 ; 2 Saund. Pl. and Evid. 797, 798. And to the point that it is sufficient to prove such of the words laid as are actionable, they cited *Loomis* v. *Swick*, 3 Wendell, 205 ; *Fox* v. *Vanderbeck*, 5 Cowen, 513 ; *Miller* v. *Miller*, 8 Johns. R. 74 ; *Nelson* v. *Dixie*, Cas. Temp. Hardw. 305 ; *Regina* v. *Drake*, 2 Salk. 660 ; *Maitland* v. *Goldney*, 2 East, 438 ; *Flower* v. *Pedley*, 2 Esp. R. 491.

MORTON J. afterward drew up the opinion of the Court. The declaration contains three counts. To the *first* and *second* no objection is made ; but the defendant moves to arrest the judgment on account of the insufficiency of the *third*. In this count the plaintiff alleges, that the defendant charged her with the crime of fornication. The defendant's counsel contends that to allege the substance of the slander is not sufficient ; but that the precise words must be set forth.

This question was directly settled, by this Court, in the case of *Nye* v. *Otis*, 8 Mass. R. 122. The defendant's counsel does not attempt to distinguish the two cases ; but very properly admits, that if that case is to be regarded as a binding authority, it is decisive of this. He however calls upon us to revise that adjudication and carefully to re-examine the principles and authorities upon which it was made. He has investigated and discussed the subject with ability and learned research.

The judgment in *Nye* v. *Otis* was not a hasty one, but formed upon deliberation, and after a continuance *nisi* for advisement. It has remained unquestioned, in this State, for more than twenty years ; and as far as we can learn, has met the entire approbation of the bar and of the whole community. The practice has been in conformity with it, and the Court have had ample opportunity to witness its operation. Surely it ought not now to be overruled on slight grounds. Even if the decision were doubtful in principle, and without authority to rest upon, it would be much better to adhere to it, than to change a rule to which we all have been so long accustomed.

This mode of declaring did not originate with *Nye* v. *Otis*, but extends much further back. It is known to have been in use ever since the adoption of our constitution ; and there is no reason to believe that it was then introduced. It is found in American Precedents of Declarations, and more ancient manuscript books of precedents. It was used by our most learned jurists and most astute pleaders, at a time when special pleading was deemed more important and better understood than at the present day. Amer. Prec. Decl. (edit. 1810) 308, 309, and note ; where the precedent was drawn by Parsons and Jackson.

It has a prescriptive claim to our respect, and should not be abrogated unless it can be clearly shown to be in violation of established principles of law, inconvenient in practice, or subversive of the ends of justice.

There is no reason to suppose that this form of declaration is of American origin. In Morgan's Vade Mecum, a practical work of respectable authority, published soon after our independence, it is not only spoken of as a well established prac-

Whiting
v.
Smith.

tice, but is recommended as safe and highly expedien* In *vol.* 1, *p.* 146, the author says, " the declaration may either lay the words spoken, or set out the substance of the words. If the substance only be set out, as that the defendant charged the plaintiff with such or such a crime, then it is sufficient to prove the substance. If the very words are laid, those words must be proved as laid. It is therefore customary, where there is the least doubt as to proving the identical words, to add a count in the above form." See 3 Morgan's Vad. Mec. 205.

In Richardson's Practice of the King's Bench, a book of precedents first published nearly a century ago, similar forms are found. Among others is the following, by a dyer alleging that the defendant spoke " words of the said W. H. (the plaintiff) purporting that the said W. H. used to defraud those who entrusted him with their goods to be dyed in his said art of a dyer, of such their goods, and converted the same to his own use." 2 Rich. Pract. K. B. 109.

In the case of *Nelson* v. *Dixie,* cited and relied upon in *Nye* v. *Otis,* that most learned and able judge Lord *Hardwicke* says, " An action for words may either lay the particular words spoken, as in this case, or may set out the substance of the words spoken ; and if the substance only be set out, as &c., then it is sufficient to prove the substance of the words, and that was Hayley's case." Cases Temp. Hardw. 305. Although this remark is only illustrative of, and not essential to the point decided, yet the mere *obiter dicta* of so great a man, are entitled to respect. And perhaps this is of as much authority as if directly adjudicated ; for he speaks of it as a familiar and well settled practice, and refers to a case where he says it was decided.

This opinion of Lord Chief Justice *Hardwicke* was given in 1736 ; and though often referred to in digests and in judgments of courts, was never questioned till 1814, when it was somewhat unceremoniously overruled by his learned successor Lord *Ellenborough.* He says this opinion was hastily thrown out at *nisi prius* ; was an *obiter dictum* ; and evidently founded on a mistake in regard to the precedent in Rastell. We have no inclination or occasion to inquire into the relative accuracy of the conflicting statements of these two illustrious judges, who

at different and remote periods so honorably filled the same exalted station. But by looking into Rastell, fol. 593 *b*, and 594, entries 2 and 3, — 126, entries 3 and 4, — 287, 436 *b*, and 628 *b*, it may turn out that Lord *Hardwicke's* remark was not so unfounded as his successor seems to suppose ; and that it is possible that Rastell's Entries were as familiar to the former as to the latter Lord Chief Justice. Although no precedent of a general charge of *larceny* may be found, yet we think the above references will show, that as early as the time of Rastell, the form of setting out the *substance* instead of the *words* themselves, was sometimes used.

The anonymous case in Ventris, 264, certainly supports this general mode of declaring. There " the plaintiff set forth that the defendant *malitiosè crimen feloniæ imposuit,* without mentioning any particular felony ; and it was held well enough." This case ever has been and still is recognised in the English courts as good law. Com. Dig. *Action on the Case for Defamation, D* 4 ; *Blizard* v. *Kelly,* 2 Barn. & Cressw. 283 ; *S. C.* 3 Dowl. & Ryl. 519.

And its authority has never been questioned anywhere, except by Mr. Justice *Gibson* in *Yundt* v. *Yundt,* 12 Serg. & Rawle, 427. Although it may apply to cases of malicious prosecution and not to slander, yet the principle adopted extends to the latter as well as to the former class of cases. It is more indefinite and uncertain than the general count in slander. And the objections to the latter, as to the identity of the cause of action and the notice to the defendant, are not so strong as to the former.

In reviewing all the English cases of slander and comparing them together, it is not easy to extract from them any very intelligible, consistent and rational rules ; much less to reconcile them with each other. There are subtilties and refinements, if not incongruities and absurdities, which do no credit to the decisions or the courts who made them. I will not however repeat what an eminent English judge said of them, in *Colman* v. *Goodwin,* 3 Doug. 90, " The determinations in the old books are a disgrace to the law."

It now seems to be holden, that it would be improper to aver that the slander was " to the effect following " ; *Rex* v.

*Bear,* 2 Salk, 417 ; *Wood* v. *Brown,* 6 Taunt. 169 ; or " of the substance following " ; *Wright* v. *Clements,* 3 Barn. & Ald. 503 ; *Cook* v. *Cox,* 3 Maule & Selw. 115 ; *Flint* v. *Pike,* 4 Barn. & Cressw. 473 ; *S. C.* 6 Dowl. & Ryl. 528 ; but perfectly proper to say, " the matter following " ; and this will let the plaintiff in to prove the substance of the slander. *Regina* v. *Drake,* 2 Salk. 660 ; 2 Saund. Pl. and Ev. 797.

We do not doubt that the count under consideration, either upon demurrer, or on motion in arrest of judgment, would be adjudged insufficient, not only in England, but in several of the American States. *Ward* v. *Clark,* 2 Johns. R. 10 ; *Yundt* v. *Yundt,* 12 Serg. & Rawle, 427.

But we do consider it doubtful at least, whether the English courts or our own have departed from the old English practice. It is very apparent that this mode of declaring has not been much practised of late in the English courts. It is not to be found in any of their modern approved books of precedents. But we have in many matters of practice widely departed from the English forms. We have greatly shortened and simplified, and, as we trust, improved them. Our practice is admirably calculated to promote the ends of substantial justice, without exposing it to be entangled in the meshes of technical subtilties or unmeaning formalities.

We have tested the effects of this form of declaring, by long experience, and have found no evil to result from it. But on the contrary, it has proved convenient in practice and promotive of justice. And were it now a question whether it should for the first time be introduced into our courts, with the light we now possess, we could not doubt how to decide it. But this is not the case. And whether it was, when adopted, well supported by authority or not, it is now an established . rule, and we have no disposition to change it. Greater liberality in legal proceedings prevails at the present day, than formerly. More regard is had to substance and less to form. To abolish our own and adopt the English practice, would be a retrograde movement.

This mode of declaring, in our opinion, infringes no legal principle and violates no rule of pleading. It gives to the defendant reasonable notice of the complaint to which he is

called to answer ; and furnishes adequate defence against another action for the same cause. The court will always protect the parties against surprise ; and for this purpose will ever require the plaintiff to furnish a particular statement of the grounds of his action, when the nature of the case renders it necessary. And this practice extends to actions of slander, as well as to other suits. When the judgment is pleaded in bar of another action for the same cause, there can be no greater difficulty in proving the identity, than in many other actions where it does not appear from the record.

There is great convenience in this general mode of declaring. It prevents unreasonable prolixity. For the plaintiff may not know beforehand exactly what words he may be able to prove. Witnesses may not agree in their recollection of words, although they may entirely agree as to the substance. Hence with a certainty of the slanderous charge, the plaintiff may be under the necessity of declaring in a great many counts and introduce a great many different sets of words, all, substantially, of the same import, to meet his proof ; and thus occasion great prolixity on the record, great inconvenience in the trial, and perhaps at last, with a just cause and plenary proof, be defeated by some verbal variance.

If the plaintiff sets forth the words, he is bound to prove them as laid. Things immaterial in themselves are often made material by a special allegation. And although the ancient strictness in this respect is exploded, yet it is now a settled and reasonable rule in pleading, that the *allegata* and *probata* must agree, and that the *material* and *actionable words* must be proved as stated, and cannot be supplied by proof of *equivalent* words.

To prevent a failure of justice and to preserve the administration of the law from reproach, courts have been tempted to allow variances in proof inconsistent with the rules of good pleading. And this has introduced many nice and unfounded distinctions, if not inconsistencies and absurdities in this branch of the law.

It cannot be necessary to state the words, to enable the court to determine whether they are actionable or not ; for

Whiting
*v.*
Smith.

this can as well be done upon proof in court, as upon aver-
ment and demurrer, and will save the court the unnecessary
labor of deciding a case which may never be proved, and
perhaps never existed in fact.

Upon a careful revision of the subject, we are well satis-
fied with the law as laid down in *Nye* v. *Otis.* We think
that case was fully considered and wisely decided ; and we
are happy to say in relation to it, *stare decisis.*

In making this decision, we have no regard to the form
in which this question is brought before us ; but should have
sustained the declaration on demurrer.

Having come to the conclusion that the third count is
good, we might properly render judgment on that ; knowing,
as we do, that there was but one cause of action and but
one ground of damages. But we have no need to do this ;
for in looking into the evidence as reported, we are satisfied
that the proof is sufficient to support both the other counts.

The rule before stated is not now enforced with that rig-
orous and ridiculous degree of strictness which it anciently
was. It is true that material words, those which are essen-
tial to the charge made, must be proved as laid ; and can-
not be supplied by equivalent words, — as words in one lan
guage by a translation into another. But in relation to un
important, connecting, or descriptive words, some latitude is
allowed. And a failure to prove all the circumstantial parts
of a slander is not fatal. But even now the form of ex-
pression cannot be varied so far as to substitute the second
person for the third, as *you* for *he* or the reverse. Bull.
N. P. 5 ; Esp. Dig. (3d edit.) 521 ; *Miller* v. *Miller,* 8
Johns. R. 75 ; *Fox* v. *Vanderbeck,* 5 Cowen, 513 ; *Mait-
land* v. *Goldney,* 2 East, 438 ; *Flower* v. *Pedley,* 2 Esp. R.
491 ; 2 Saund. Pl. and Ev. 799. The strictness of this
rule, which always may be obviated by the general count,
fortunately does not apply to either of the counts in this de-
claration. The above principles cannot be better illustrated
than by the case at bar. The material words in both counts
are, " *she is a whore.*" The additional words in the first
count, " *and unfit to keep school,*" and in the second, " *right
from the hill in Boston,*" are not in themselves actionable,

do not qualify or change the meaning of the following words, and need not be proved. So the word " *bitch* " in the latter count, is an unmeaning expletive. They all may be considered as immaterial and treated as mere surplusage.

Whiting
*v.*
Smith.

All the counts, in our opinion, are good, and the proof proper to support them; judgment must therefore be rendered on the verdict.